**IN THE UNITED STATES DISTRICT COURTp**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**UNITED STATES OF AMERICA,**

**v.**                                                                Criminal No. **2:19CR164**

**ADIAN MARSELL BARTH,**

      Petitioner.

**MEMORANDUM OPINION**

      Adian Marsell Barth, a federal inmate proceeding *pro se*, filed this 28 U.S.C. § 2255

motion to vacate, set aside, or correct his sentence. ("§ 2255 Motion," ECF No. 277.) The matter

was transferred to the undersigned by the Norfolk Division of this Court.[1] In his § 2255 Motion,

Barth contends that he is entitled to relief upon the following grounds:[2]

| | |
|---|---|
| Claim One: | "The Petitioner received ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution when counsel failed to argue for a more drastic reduction to the offense level based upon improper drug weights being attributed to the Petitioner." (*Id.* at 6.) |
| Claim Two: | "The Petitioner received ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution when counsel failed to argue for a reduced sentence based upon the difficult conditions of confinement, in that the Petitioner was threatened to continue participation in the conspiracy." (*Id.*) |
| Claim Three: | "The Petitioner's plea was rendered constitutionally infirm when he received ineffective assistance of counsel during sentencing proceedings in violation of the Sixth Amendment to the United |

---

      [1] The Honorable Robert G. Doumar presided over the criminal case. On May 17, 2022, the action was reassigned to the Honorable Arenda L. Wright Allen. On August 2, 2022, the Norfolk Court disqualified itself and transferred the § 2255 Motion to the Richmond Division.

      [2] The Court employs the pagination assigned by the CM/ECF docketing system to the record and the parties' submissions. The Court omits any secondary citations in quotations from the parties' submissions.

States Constitution, as the Petitioner was unaware of the actual consequences of pleading guilty." (*Id.*)

Barth filed a Memorandum in Support of his § 2255 Motion, (ECF No. 278), and after the Government was ordered to respond, he filed two lengthy supplemental filings in support of his § 2255 Motion. (ECF Nos. 282, 283.)[3] The Government filed a response. (ECF No. 307.)[4] Barth filed a Reply. (ECF No. 312.)[5] The § 2255, (ECF No. 277), will be DENIED because it lacks merit.

## I. PROCEDURAL HISTORY

### A.    Guilty Plea Proceedings

On October 2, 2019, the grand jury charged Barth with conspiracy to distribute and possess with intent to distribute 500 grams of more of a mixture and substance containing a detectable amount of cocaine (Count One), and three counts of distribution of a mixture and substance containing a detectable amount of cocaine (Count Six, Eight, and Nine). (ECF No. 3, at 1–5, 8–

---

[3] The first supplemental filing, (ECF No. 282), is a copy of a letter to a "Mr. Robinson . . . inform[ing him] of certain issues that [Barth] feel[s] should be looked into for my defense." (*Id.* at 1.) The letter is mostly composed of rambling notes and "points" about his discontent with various elements of his criminal proceedings with citations to case law. The second supplemental filing appears to be exhibits. (ECF No. 283.) It is unclear why Barth submitted these filings. To the extent that Barth filed these documents in an attempt to raise new claims or allegations, Barth did not seek leave to amend his § 2255 Motion, therefore any new claims or allegations lurking therein will not be considered.

[4] The Court notes that the Government construes Claims One and Two as sentencing claims that are not cognizable in § 2255 and are defaulted because they are the type of claims Barth should have raised on appeal. (ECF No. 307, at 1–9.) However, the Court views these claims as primarily claims of ineffective assistance of counsel which Barth may appropriately raise in a § 2255 motion.

[5] To the extent that Barth raises new ineffective assistance of counsel claims in his terse Reply pertaining to counsel's withdraw or a sentencing enhancement (*see* ECF No. 312, at 2, 3–4), it is not properly before the Court. "[I]t is axiomatic that [a petition] may not be amended by the briefs in opposition to a motion to dismiss. To hold otherwise would mean that a party could unilaterally amend a [petition] at will, even without filing an amendment, and simply by raising a point in a brief." *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) (internal citations omitted).

9.)  Barth initially retained John Rockecharlie as counsel.  (ECF No. 42.)  Less than three weeks later, however, the Court granted Mr. Rockecharlie's motion to withdraw, and James O. Broccoletti was substituted as counsel. (ECF No. 57.) Mr. Randall Leeman, who was an associate at Mr. Broccoletti's firm, (*see* ECF No. 307–2 at ¶¶ 3–4), represented Barth at a motion to continue the trial hearing, although it does not appear that he ever noted his appearance on the docket. (ECF No. 70.)  On February 3, 2020, Barth pled guilty to Counts One and Six, and Mr. Leeman represented Barth at the plea hearing.  (ECF No. 103.)

In his Plea Agreement, Barth agreed that for Count One, the mandatory minimum term of incarceration was five years, and the maximum term was forty years; and for Count Six, the maximum term of imprisonment was twenty years.  (ECF No. 104 ¶ 1.)  Barth agreed that he was "plead[ing] guilty because [he was] in fact guilty of the charged offense," and that he "admit[ted] the facts set forth in the statement of facts filed with this plea agreement and agree[d] that those facts establish guilt of the offense beyond a reasonable doubt."  (*Id.* ¶ 3.)  Barth affirmed that he understood that the Court could "impose any sentence within the statutory maximum," and "that the Court ha[d] not yet determined a sentence and that any estimate of the advisory sentencing range . . . [he] may have received from [his] counsel . . . is a prediction, not a promise . . . and is not binding on . . . the Court."  (*Id.* ¶ 5.)  Barth also specifically agreed that "the Court, after considering the factors set forth in 18 U.S.C. § 3553(a), may impose a sentence above or below the advisory sentencing range," and that Barth could not "withdraw a guilty plea based upon the actual sentence."  (*Id.*)  The Government agreed that, in exchange for Barth's guilty plea, it would move to dismiss Counts Eight and Nine.  (*Id.* ¶ 10.)  Barth initialed each page of the Plea Agreement and signed it at the end, showing that he had "read this plea agreement and carefully reviewed every part of it with [his] attorney," and "unders[tood] this agreement and voluntarily

agree[d] to it." (*Id.* at 10.) Mr. Leeman also signed the agreement, indicating that he had "carefully

reviewed every part of this plea agreement with" Barth and that, to his knowledge, Barth's decision

to enter the plea was "informed and voluntary." (*Id.*)

In the accompanying Statement of Facts, Barth agreed that:

[A]t trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and competent evidence:

1.     From in or about January 2019 and continuing thereafter up to and including August 29, 2019, in the Eastern District of Virginia, ADIAN MARSELL BARTH participated in a drug trafficking organization (DTO) with codefendants Corey Jermaine Evans, Juan Gabriel Rodriguez-Preciado, Derrick Lee Lewis, and Jason Reuben Gregory to distribute and possess with intent to distribute 500 grams or more of a mixture and substance containing a detectible amount of cocaine.

2.     It was part of the conspiracy that the defendants and unindicted co-conspirators would and did play different roles in the conspiracy, taking upon themselves different tasks and participating in the affairs of the conspiracy through various criminal acts. Some of the roles which the defendants and co-conspirators assumed and carried out included, among others, organizer, manager, distributor, packager, supplier, middleman, collector, enforcer, and facilitator. Specifically, BARTH was the leader of a regional DTO that transported and distributed large quantities of cocaine and collected drug proceeds within the Hampton Roads area. Corey Jermaine Evans acted as an enforcer and money collector for BARTH. Derrick Lee Lewis acted as a runner, distributor, and packager for the DTO. Jason Reuben Gregory acted as a local distributor for the DTO. Juan Gabriel Rodriguez-Preciado acted as a facilitator and middleman between the DTO and a Mexican cartel.

3.     In furtherance of the conspiracy's aims, the defendant committed overt acts, including, but not limited to, the following:

a. On or about July 18, 2019, BARTH directed Gregory to go to Lewis's residence in Midlothian, Virginia. Gregory and Lewis met at Lewis's residence. BARTH contacted Lewis and told Lewis that Gregory and Lewis could go to "the house." Gregory and Lewis went to an address in North Chesterfield.

b. On or about July 18, 2019, BARTH arrived at the residence in North Chesterfield and directed another individual to distribute multiple ounces of cocaine to Gregory. The other individual distributed the cocaine to Gregory. BARTH directed Gregory to sell the cocaine within two days.

c. On or about July 22, 2019, BARTH coordinated a meeting with Gregory to distribute approximately nine ounces of cocaine to Gregory. BARTH directed Gregory to meet Lewis at Lewis's residence in Midlothian, Virginia.

d. On or about August 23, 2019, BARTH spoke with Gregory about distributing a quantity of cocaine to Gregory. BARTH provided a phone

number to Gregory.  Gregory called the number, and Lewis answered and arranged to meet with Gregory.

4.      Based upon the following information obtained during the course of the investigation, law enforcement obtained state search warrants for five physical locations within the Eastern District of Virginia.  At an address on Sunset Hills Drive in Chesterfield, Virginia, law enforcement located BARTH, as well as a quantity of cocaine, a black scale with powder residue, six cell phones, and approximately $7,000 in United States currency.  At an address on Mallard Landing Circle in Midlothian, Virginia, law enforcement located Derrick Lee Lewis, as well as a "brick" of compressed cocaine wrapped in electrical tape, approximately eight plastic baggies containing cocaine, Western Union receipts, a ledger, five scales, five cellphones, various rounds of ammunition, two loaded Glock firearms, and approximately $10,577 in United States currency.  At an address in Shiloh Place in Mechanicsville, Virginia, law enforcement located Corey Jermaine Evans, approximately $833 in United States currency, and several grams of cocaine.  At an address on Laveta Drive in Richmond, Virginia, law enforcement located Juan Gabriel Rodriguez-Preciado, as well as five phones, a digital currency counter MoneyGram receipts, a Walmart money transfer receipt, a purple notebook containing owe sheets, and thirteen sheets containing boarding pass information. Rodriguez-Preciado was advised of his *Miranda* rights by law enforcements.  He waived his rights and told law enforcement that he had distributed three kilograms to codefendant Lewis the day prior.  Rodriguez-Preciado also described to law enforcement about how he worked as a middleman between BARTH and a Mexican cartel.

5.      The parties agree that the quantity of controlled substances involved in the conspiracy attributed to BARTH as a result of his own conduct and the conduct of other conspirators reasonably foreseeable to the defendant is at least 500 grams of cocaine.  Cocaine is a Schedule II narcotic controlled substance.

6.      All of the incidents set forth above occurred in the Eastern District of Virginia.

7.      The acts taken by the defendant, ADIAN MARSELL BARTH, in furtherance of the offenses charges in this case, including the acts described above, were done willfully and knowingly with the specific intent to violate the law.  The defendant acknowledges that the foregoing statement of facts is a partial summary of the case and does not describe all of the defendant's conduct relating to the offenses charged in this case, not does it identify all of the persons with whom defendant may have engaged in illegal activities.

(ECF No. 105, at 1–4.)  At the bottom of the Statement of Facts, Barth acknowledged that "[a]fter consulting with my attorney, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt."  (*Id.* at 4.)

During the Rule 11 hearing, Barth agreed that he had discussed the charges against him with counsel and understood the charges and what the United States would have to prove. (ECF No. 302, at 4–7.) Barth agreed that he understood that he faced a mandatory minimum sentence of five years of incarceration up to maximum term of forty years on Count One, and a maximum of twenty years on Count Six. (*Id.* at 5–6.) The Court advised Barth that "[i]n calculating this particular guideline range, the Court advises you that it may take into consideration all your activities in arriving at such a sentence, including activities for which you're not charged and activities for which charges or indictments have been or will be dismissed." (*Id.* at 8.) The Court asked Barth: "Do you understand all of this will be taken into consideration to determine the Advisory Sentencing Guidelines . . . ." (*Id.*) Barth indicated that he understood. (*Id.*)

Barth agreed that he had reviewed the Plea Agreement with his counsel and that he entered it freely and voluntarily. (*Id.* at 16.) Barth indicated that he initialed each page to show that he had discussed its contents with his attorney. (*Id.*) Barth agreed that no one, including his attorney, had made any promise of leniency in exchange for his plea of guilty. (*Id.* at 19.) Barth also agreed that he understood that "any recommendation by the prosecution or any agreement by the prosecution not to oppose your attorney's request for sentence is not binding on the Court," (*id.* at 20), and that "your attorneys can't be exact and specific as to the guidelines which will apply . . . because they do not have all of the necessary information" yet." (*Id.* at 23.) Barth agreed that he had discussed all the facts in his case and possible defenses with Mr. Leeman and Mr. Broccoletti. (*Id.* at 20.) The Court explained to Barth that "the Court has the right to depart upwards or downwards from the Advisory Guidelines." (*Id.* at 21.) Barth specifically agreed that if he pleaded guilty, he would "not be able . . . to withdraw [his] plea of guilty . . . on the ground that your lawyer's prediction as to the guideline range . . . if the guideline that they predicted proved to be

6

in error or inaccurate in any way." (*Id.* at 23.)  Barth also agreed that he understood that by pleading guilty, he waived the right to appeal "any sentence imposed upon any ground whatsoever, so long as that sentence is within the statutory maximum." (*Id.* at 23–24.)

Barth agreed that he was pleading guilty to Counts One and Six because he was indeed guilty of those charges and that his pleas were free and voluntary. (*Id.* at 26–28.)  The Government read the Statement of Facts supporting the charges, and Barth admitted that all of the facts were true. (*Id.* at 28–33.)  The Court then found that the guilty pleas were knowing and voluntary, and supported by an independent basis of fact supporting the charges, and the Court accepted Barth's pleas. (*Id.* at 33–34.)

### B.    Barth's Behavior Before Sentencing and Counsel's Withdrawal

Before sentencing, Mr. Broccoletti filed a Motion to Continue sentencing from the scheduled date of September 28, 2020, because COVID–19 had "prevented Mr. Barth from continuing to fulfill the terms of his plea agreement" and Barth wished "to again avail himself of this opportunity and hopes to have made significant progress prior to his sentencing," and because Barth desired to remain nearby for co-defendant Rodriguez's trial in January 2021. (ECF No. 146, at 1.)  The Court granted the motion and rescheduled Barth's sentencing for February 8, 2021. (ECF No. 148.)

On October 29, 2020, Mr. Broccoletti moved to withdraw as counsel citing a "complete break down of the attorney-client relationship." (ECF No. 158, at 1.)  Mr. Broccoletti explained that Barth believed that counsel was "not 'advocating for him,'" that he demanded a new paralegal and called the current one "incompetent," indicated that Barth "stated that he has repeatedly asked for things that have not been done," and noted that Barth continually "call[ed] the office and berat[ed] whomever answer[ed] the phone with complaints and baseless allegations and continues

7

to state that staff members are incapable of doing their job." (*Id.* at 1–2.) On November 13, 2020, the Court granted Mr. Broccoletti's motion to withdraw as counsel and appointed Mr. James Theuer. (ECF No. 160, at 1.) With Mr. Broccoletti's withdrawal, Mr. Leeman also stopped representing Barth. (ECF No. 307–2 ¶¶ 3–4.) Accordingly, at this point, Mr. Theuer was serving as Barth's only counsel. On January 9, 2021, Mr. Theuer filed a Motion to Reconsider of the order permitting Mr. Broccoletti to withdraw and requested a hearing on the Motion to Withdraw because Barth wanted "to be heard on the Motion." (ECF No. 168, at 1.) The Court set the matter for a hearing and sentencing was continued to May 10, 2021. On February 17, 2021, Mr. Theuer filed a motion to withdraw the Motion to Reconsider, and the Court subsequently granted the motion. (ECF Nos. 172, 173.)

### C. Presentence Report and Counsel's Arguments for a Lower Sentence

A Presentence Investigation Report ("PSR") had been filed on April 6, 2020, more than six months before Mr. Theuer was appointed a counsel. (ECF No. 119.) The PSR found that Barth was "attributed with 51.545 kilograms of cocaine, .121 grams of eutylone, .512 grams of heroin, and 4.09 grams of methamphetamine." (*Id.* ¶ 22 (emphasis omitted).) The PSR noted that "[t]o avoid double counting," none of the drugs identified in the Statement of Facts were included in reaching the 51.545 kilograms of cocaine. (*Id.* ¶ 21.) Barth's Base Offense Level was 34 based on a converted drug weight of 10391.35 kilograms. (*Id.* ¶ 29.) Barth received a four-level enhancement for his role as organizer or leader of criminal activity that involved five or more people, and a three-level decrease for acceptance of responsibility, resulting in a Total Offense Level of 35. (*Id.* ¶¶ 32, 36–38.) Barth's Criminal History Category was V based on his prior convictions and because he committed the offense while under a criminal justice sentence for grand

larceny.  (*Id.* ¶¶ 53–55.)  Barth's sentencing guidelines range was 262 to 327 months of incarceration.  (*Id.* ¶ 110.)

On April 26, 2021, Mr. Theuer filed a Motion for a Variance Sentence. (ECF No. 176.) Mr. Theuer noted:

> [t]he parties have resolved all factual objections to the PSR but for one.  Mr. Barth has objected to the drug weight attributed to him of 51kg of cocaine; he believes the weight attributed to him should be 15–50kg of cocaine.  The Government has told defense counsel that it believes the drug weight in the PSR is overstated and agrees that 15–50kg is the appropriate drug weight range.  If the Court agrees with the parties, the total offense level is 33.

(ECF No. 177, at 1 n.1.)  Mr. Theuer also argued that various personal reasons filed under seal, Barth's legitimate livelihood, and the "parsimony principle" should result in Barth receiving a lower sentence than the guidelines range.  (*Id.* at 5–7.)  Mr. Theuer argued that "[t]he Court should vary downward to arrive at an appropriate sentence and sentence Mr. Barth to a sentence of 132 months."  (*Id.* at 7.)

On April 28, 2021, a revised PSR was filed but Barth's advisory guidelines range remained the same.  (ECF No. 181.)  The probation officer noted, however, that "[t]he Government object[ed] to the drug weight attributed the defendant . . . and assert[ed] it [was] overstated. . . . At this point, the probation officer believes this is an issue which the Court will have to resolve with a Finding of Fact."  (*Id.* at 35.)  Mr. Theuer also objected to the drug weight as overstated, specifically, that certain "drug weights attributed him in this paragraph are based solely on codefendant Rodriguez-Preciado's uncorroborated statements and are overstated."  (*Id.* at 36.)  Mr. Theuer also objected to the probation officer's assessment of two points in Barth's criminal history for committing the current offenses while serving a criminal justice sentence.  (*Id.*)

In the Position on Sentencing, with respect to drug weight, Mr. Theuer again argued that the "proper drug weight attributable to him is the equivalent of 15–50 kg of cocaine for an offense

level of 32." (ECF No. 184, at 2.)  Mr. Theuer argued that the "[t]he 51.545 kg of cocaine in the PSR is derived predominantly from 40 kg attributed to Mr. Barth based on the single statement of a co-defendant [Juan Gabriel Rodriguez-Preciado],"[6] but that "[e]vidence from another co-defendant and recorded phone calls establish that this source of supply did not provide cocaine to Mr. Barth or his associates every two weeks during the period stated, and in fact provided no cocaine whatsoever for much of the period set forth in that paragraph." (*Id.* (citing PSR ¶ 19).) Counsel proposed that a sentence of 132 months of incarceration would serve the goals of 18 U.S.C. § 3553. (*Id.* at 6.)  The Government argued that Barth's Total Offense Level should be 33 based on an adjusted range of 15–50 kilograms of cocaine, with a criminal history of V, resulting in a guidelines range of 210 to 262 months. (ECF No. 185, at 1, 3.)

**D.    Sentencing**

During sentencing, the Court appeared to sustain the joint objection to the drug weight and agreed that the Barth's Total Offense Level should be 33, instead of 35, with little argument from Mr. Theuer. (ECF No. 245, at 4.) Mr. Theuer instead focused his arguments on reducing Barth's criminal history to 9 points based on the argument that Barth was not actually serving a criminal justice sentence at the time of the federal offense. (*Id.* at 4–8, 23.) Mr. Theuer also argued for a variant sentence because Barth had a legitimate livelihood and a supportive family, and due to the disparity in sentencing from his co-defendants and the overly harsh nature of the sentencing guidelines. (*Id.* at 23–26.) Based on Mr. Theuer's successful arguments, the Court determined that Barth's Total Offense Level was 33, and that the Court was "going to put you in . . . criminal history category four, which calls for a sentence between 188 and 235 months." (*Id.* at 31.) The Court further explained:

---

[6] Rodriguez-Preciado indicated that "[f]rom July 1, 2019 until August 29, 2019, [he] obtained 10 kilograms of cocaine every two weeks that he would sell to Adian Barth." (PSR ¶ 19.)

I recognize that your intelligence quotient is a great deal higher than those of individuals who normally appear here, which tells me that you certainly knew what you were doing when you did it. You have a problem with anger management, from your final record, it would appear, and I understand that.

    . . . .

    In looking at this, this is not what I would term a minor crime. It was a major drug distribution ring, major. You had more than five individuals that were participating, and you were the leader, was coming from Mexico. I can understand it makes Mexico that much richer, that's good. Ultimately, makes this country poorer.

    All of this I've tried to take into consideration. I worry about the factors in Title 18, Section 3553. Your prior record is not good. Now, looking at it, and your attorney makes good arguments, and he was able to [prevent] the utilization of a higher total offense level of 35, which saves you a great deal of sentence. Instead of guideline provisions of 262 to 327 months, you're in a category of 188 to 235 months.

    The question is what . . . sentence [is] appropriate taking into consideration the guidelines as well as the factors in Title 18, Section 3553 and to arrive at a sentence that is sufficient but no greater than necessary. I think I've tried to analyze whether it was in category five or four. . . . I'm afraid that we are now in a situation that it's bad to have a criminal record that goes back that finds that you were dispensing controlled substances even when you were a juvenile.

    You have trouble following the rules of the Virginia courts that were imposed after sentencing. . . .

    . . . However, I'm going to impose a sentence between 188 and 235 months in this case. I find that that sentence within that range is sufficient but no greater than necessary.

    So, consequently, I've looked at everything that I possible could. . . .

(*Id.* at 31–33.) The Court ultimately sentence Barth to 225 months of incarceration, which was within the revised guidelines range it found appropriate. (ECF No. 189, at 2.) Barth filed no appeal.

On May 16, 2022, Barth filed the § 2255 Motion that is currently before the Court.

## II. ANALYSIS

### A. Ineffective Assistance of Counsel

To demonstrate ineffective assistance of counsel, a convicted defendant must first show that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient

performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

In the context of a guilty plea, the Supreme Court has modified this second prong of *Strickland* to require the convicted defendant to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Of course, in conducting the foregoing inquiry, the representations of the convicted defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). In light of the strong presumption of verity that attaches to a petitioner's declarations during his plea proceedings, "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (citations omitted). Thus, the Fourth Circuit has admonished that "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should,

without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Id.* at 221–22. No circumstances exist here that would lead the Court to consider Barth's prior sworn statements as other than truthful.

As an initial matter, the record establishes that Barth was not an easy client to represent and was rude and demeaning to his counsel and their staff. Barth clearly had many thoughts about how his defense should be handled which likely differed from counsel's chosen strategy. However, simply because Barth was dissatisfied with counsel's performance because he ultimately received a sentence that was higher than desired, and because Barth, who is not attorney, believed that counsel should have handled a matter differently, does not show that counsel's performance was deficient. As discussed below, counsel was neither deficient, nor was Barth prejudiced.

### B. Guilty Plea Claim (Claim Three)

In Claim Three, Barth contends: "The Petitioner's plea was rendered constitutionally infirm when he received ineffective assistance of counsel during sentencing proceedings in violation of the Sixth Amendment to the United States Constitution, as the Petitioner was unaware of the actual consequences of pleading guilty." (ECF No. 278, at 1–2.) Barth states first, that "defense counsel failed to investigate potential sentencing arguments." (*Id.* at 21.) Barth admits that "[a]t numerous points prior to entering the plea, [he] spoke with counsel regarding sentencing claims." (*Id.*) Barth indicates that, "[c]ounsel assured [him] that such claims, such as arguments regarding drug weight and mitigation based upon difficult conditions of confinement, would be raised at sentencing. Based upon such promises, [Barth] entered a plea that would otherwise not have been entered." (*Id.* at 21.) Finally, Barth suggests that "counsel's failure to investigate insured that [Barth] was unaware of viable alternatives to pleading guilty and was unaware of the

consequences of pleading guilty, as he believed that defense counsel would argue for [a] lower possible sentence." (*Id.* at 23.)

Mr. Broccoletti and Mr. Leeman represented Barth at the time of his guilty plea. Mr. Theuer was not Barth's attorney at that point. Mr. Broccoletti avers that he "spoke with Mr. Barth on numerous occasions and assisted in preparing Barth for his plea hearing." (ECF No. 307–1 ¶ 4.) Mr. Broccoletti explains that:

> To the extent Mr. Barth claims that I misled him in any form or fashion with respect to his possible sentencing exposure, or that he was unaware of his possible exposure, such claims are false;
> I discussed Mr. Barth's potential exposure with him on several occasions and was always honest and forthright with him. Mr. Barth was well aware that the government's position was that he was responsible for at least 40 kilograms of drug weight. . . .
> To the extent Mr. Barth claims that he did not understand that he was required to agree with every allegation contained within the statement of facts, such claim is false. I specifically recall discussing certain provisions of the statement of facts with Mr. Barth, and that during these discussions, he was concerned with the inclusion of certain provisions and phrases because he would not be able to later contest them. Indeed, we negotiated with the government to remove or amend certain items based on Mr. Barth's concerns. There is absolutely no question that Mr. Barth knew and understood that by signing his statement of facts, he was agreeing to the truth of every provision therein and that he would not be able to later contest anything contained in the signed statement of facts;
> To the extent Mr. Barth claims that I forced or coerced him to respond in a certain manner during his plea colloquy, such claim is false. As noted above, Mr. Barth knew that he would be unable to contest any provision of the statement of facts that he signed and agreed to. Any claim that he did not understand this at his plea hearing is false;
> I never told Mr. Barth that he would only be responsible for the drug weights contained in his statement of facts, nor did I ever tell him that he would be responsible for no more than five kilograms of drug weight. Mr. Barth was frequently upset and frustrated because, although we did not agree with the government's claim of 40 kilograms, neither I nor Mr. Leeman could be specific about the drug weight for which he would be held responsible.

14

(*Id.* ¶¶ 6–9 (paragraph numbers omitted) (internal citations omitted).)[7] Mr. Leeman echoes Mr. Broccoletti's testimony and adds that he spoke at length with Barth in the holding cell after the plea hearing, and he did not remember Barth raising these concerns. (ECF No. 307–2 ¶ 10.)

Barth's contentions here are incredible and not entitled to any weight. From his own statements, Barth clearly understood that the amount of drug weight that would be attributed to him was undecided at the time of his guilty plea. In his Plea Agreement and Statement of Facts, Barth agreed that he was responsible for 500 grams *or more* of cocaine. Nowhere in the Plea Agreement, or in the Statement of Facts, was a guarantee that he would be held accountable for only 500 grams, nor does Barth suggest that counsel ever told him that. Instead, as counsel indicates and Barth does not contest, Barth was aware that the government's position was that he was responsible for at least 40 kilograms. Counsel also explained to Barth prior to his plea that they could not provide him with the specific quantity of drugs that would be attributed to him at sentencing, and Barth was unhappy with that answer. Finally, Mr. Leeman and Mr. Broccoletti were correct in their statements to Barth that any arguments with respect to relevant conduct and attributable drug weight were a matter for sentencing. Accordingly, Barth did not enter his guilty plea based on any coercion or false information about his sentence.

Barth's contentions here are also foreclosed by his statements under oath during the Rule 11 hearing. The Court made it clear, and Barth agreed that he understood, that he faced a mandatory minimum sentence of five years of incarceration up to maximum term of forty years on Count One, and a maximum of twenty years for Count Six. (ECF No. 302, at 5–6.) The Court

---

[7] Mr. Leeman echoes Mr. Broccoletti's testimony and adds that he was with Barth at the plea hearing and spoke at length with Barth in the holding cell after the plea hearing, and he did not remember Barth raising concerns about challenging elements of his statement of facts. (ECF No. 307–2 ¶ 10.)

advised Barth that "[i]n calculating a particular guideline range, . . . it may take into consideration *all your activities* in arriving at such a sentence, *including activities for which you are not charged and activities for which charges or indictments have been or will be dismissed*." (*Id.* at 8 (emphasis added).) The Court asked Barth: "Do you understand all of this will be taken into consideration to determine the Advisory Sentencing Guidelines . . . ." (*Id.*) Barth indicated that he understood. (*Id.*) Barth agreed that no one, including his attorneys, had made any promise of leniency in exchange for his plea of guilty. (*Id.* at 19.) Barth also agreed that, "your attorneys can't be exact and specific as to the guidelines which will apply . . . because they do not have all of the necessary information" yet." (*Id.* at 23.) Barth affirmed that he was pleading guilty to Counts One and Six because he was indeed guilty of those charges and that his pleas were free and voluntary and that the Statement of Facts supporting the charges were true. (*Id.* at 26–33.) Finally, Barth agreed that his plea was *not based on any promise not contained in the Plea Agreement*, and he was entering his plea freely and knowingly and because he was indeed guilty. (*Id.* at 19, 26–28.) Nothing in the record would permit the Court to consider Barth's sworn statements at the plea colloquy that he understood that the Court could take into consideration all of his activities charged or uncharged, that his attorneys had made no promise as to his sentence, and that he could be sentenced up to forty years, as anything other than truthful.[8]

---

[8] In the unsworn letter Barth filed as a supplement, Barth suggests that he "was confused after the judge told me I could not argue with the alleged facts if untrue," and "he looked to [his] attorney in disbelief and rage as he nudged me and said, 'just say yes,' as my willingness to answer no was objected by him (Mr. Leeman). . . . I wanted to fight the lies but couldn't afford to get railroaded for fighting, therefore, I signed it." (ECF No. 282, at 2.) First, Barth clearly was aware from his Plea Agreement, and Statement of Facts, that by pleading guilty he was admitting that the facts contained therein were true and correct, and any suggestion now to the contrary is belied by record. Second, from his own statements it is evident that Barth made a knowing and calculated choice to plead guilty in order to avoid his conviction of other counts and decrease his sentencing exposure.

Therefore, based on his representations in his plea hearing, Barth's allegations here are palpably incredible and are barred by his validly entered guilty plea. *Lemaster*, 403 F.3d at 221 (internal quotation marks omitted) (citation omitted).

Barth also fails to demonstrate any prejudice. First, Barth cannot "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Without the benefit of the favorable guilty plea and counsel's successful arguments limiting his sentencing exposure, Barth's advisory guidelines range could have been as high as 360 months to life as the Government initially suggested to counsel. (*See* ECF No. 307–1, at 4.)[9] No reasonable Defendant would have risked receiving such a sentence by proceeding to trial.

Second, as discussed below in conjunction with Claims One and Two, although Mr. Broccoletti and Mr. Leeman did not represent Barth at sentencing, they made most of the sentencing arguments Barth advances here in response to the PSR. Mr. Theuer, who represented Barth at sentencing also advanced these arguments, and the Court accepted some and rejected other arguments. Mr. Leeman and Mr. Broccoletti correctly informed Barth that arguments about drug weight were to be made at trial, and then counsel pursued these arguments. Thus, Barth's plea was not based on any error, and he was not prejudiced. Accordingly, Claim Three lacks merit and will be DISMISSED.

### C.    Sentencing Claims

In Claim One, Barth argues that: "The Petitioner received ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution when counsel failed to argue for a more drastic reduction to the offense level based upon improper drug weights being attributed

---

[9] This calculation even included the three-point deduction for acceptance of responsibility. If Barth had not pled guilty, his Total Offense Level could have been as high as 42.

to the Petitioner." (ECF No. 278, at 1.) Barth contends that "defense counsel failed to argue that

the drug amounts attributed to the Petitioner for purposes of sentencing were unsupported by

credible fact." (*Id.* at 5.) Barth argues

> The drug amounts attributed to [him] were based largely upon the
> statements of co-defendants Gregory and Rodriquez-Preciado to law enforcement
> officials. There can be little doubt that said individuals received sentencing
> consideration for the information provided . . . . However, there is no way to
> corroborate the veracity of the information provided herein. None of the drug
> amounts attributed to the Petitioner by Gregory and Rodriguez-Preciado resulted
> from a drug seizure by law enforcement officials, but rested solely upon
> information provided by less that credible sources from drug users, convicted
> felons, and those seeking to obtain leniency for providing information to law
> enforcement officials. Specific dates and locations of alleged drug distributions
> involving the Petitioner were not given. . . . All of the information provided is
> decidely vague and offers only estimations as to drug amounts. As such, the
> information in its entirety should have been challenged by counsel.

(*Id.* at 7.) Barth also argues that wiretaps showed that he was having difficulty "distributing

cocaine for at least one and a half months" during August 2019, which also calls into question the

drug weight attributed to him. (*Id.*) Barth also contends that Rodriguez-Preciado "was out of the

country during this time frame, July 24 to August 23, 2019, as evidenced by plane ticket purchase

by the confidential source and authorities." (ECF No. 312, at 1.)[10] Barth suggests that if counsel

had objected on these grounds, he would have been sentenced to a range of 151 to 188 months of

incarceration. (*Id.* at 3.)

Barth suggests that counsel rendered "ineffective at sentencing." (*Id.* at 8.) Thus, it appears

that Barth only challenges Mr. Theuer's performance as he was Barth's sole counsel at the time of

---

[10] Attached to his Reply, Barth attaches an unsworn "Affidavit" from Rodriguez-Preciado
dates April 22, 2020, that states, "as I have told my lawyer . . . I do not know of these people who
are in my case. I did not sell or give them drugs at no point since I have been in Virginia." (ECF
No. 312–1, at 2.) This statement is simply not credible as it is not sworn to under penalty of perjury
and carries no evidentiary weight and is in direct conflict with his statements to investigators and
his own conviction.

sentencing.[11]   Contrary to Barth's suggestion, Mr. Theuer made the exact argument that Barth advances here in his Position on Sentencing.   Mr. Theuer argued that the "[t]he 51.545 kg of cocaine . . . is derived from 40 kg attributed to Mr. Barth based on the single statement of a co-defendant [Juan Gabriel Rodriguez-Preciado]," but that "[e]vidence from another co-defendant and recorded phone calls establish that this source of supply did not provide cocaine to Mr. Barth or his associates every two weeks during the period stated, and in fact provided no cocaine whatsoever for much of the period." (ECF No. 184, at 2 (citing PSR ¶ 9).)   Although Mr. Theuer did not once again raise the issue at the sentencing hearing, the Court undoubtedly read and considered the arguments in the variance motion and the Position on Sentencing and was simply not persuaded.

At the beginning of the sentencing hearing, the Court indicated that Mr. Theuer's and the Government's argument that the PSR attributed too much drug weight to Barth was well-taken and lowered the relevant drug weight to 15 to 50 kilograms of cocaine.   To the extent that Barth faults Mr. Theuer for failing to make certain discreet arguments about why his co-conspirators' testimony to investigators was not reliable, Barth fails to show any deficiency of counsel or resulting prejudice.[12]   As the Court's mind appeared to be made up as to the appropriate drug

---

[11] In his Reply, Barth also addresses this claim toward Mr. Theuer only. (ECF No. 312, at 1.)

[12] Mr. Theuer also explains:

In the PSR, Mr. Barth was attributed with 51.545 kilograms of cocaine. Mr. Barth told me he did not agree with the weight attributed to him. In a meeting between us at Western Tidewater Regional Jail on March 31, 2021, Mr. Barth told me he agreed the cocaine drug weight should not be more than 5–15kg. One co-conspirator alone, L., attributed more than 5 kg to the conspiracy in his debrief. He also asked for a copy of my email to the prosecutor and the Probation Officer affirming and clarifying the objection to the drug weight first asserted by his retained counsel. I provided him with that by letter the same day.

weight at the start of sentencing, Barth fails to explain how counsel reiterating the argument from his Position on Sentencing and in the objections to the PSR or adding new arguments in support would have any impact on the Court's determination. Thus, Barth fails to demonstrate any

---

On April 13, 2021, I met with prosecutor, Ms. Montoya, and case agents Pompa and Houlihan to discuss the drug weight. The Government refused to agree to a cocaine drug weight of 5–15 kg, but agreed to seek supervisor approval for 15–50 kg and to discuss with Probation not to include a +2 enhancement for maintaining a drug premises, an enhancement that the Probation Officer had told counsel she was considering, to resolve the objection to drug weight.

On April 16, 2021, I met with Mr. Barth at Western Tidewater Regional Jail, and recounted to him the discussion with the Government on April 13, 2021. We discussed the improbability that the Court would rule in his favor on a drug weight of less than 15 kg, the threat that posed to acceptance of responsibility, and to the Court's continued acceptance of his plea, and the threat of a +2 premises enhancement if included in the PSR. Mr. Barth told me he agreed to withdraw his objection to the drug weight in return for the Government's agreement to a drug weight of 15–50 kg and no premises enhancement. On April 16, 2021, at 12:32 PM, I emailed Ms. Montoya confirming Mr. Barth's agreement. The Government communicated its agreement on the 15–50 kg drug weight and no premises enhancement to Probation. Probation emailed me on April 26, 2021, at 4:15 PM that "I spoke to [Ms. Montoya] today, and I will not be amending the PSR to reflect the 2 level increase for maintaining a premises. I will not be changing the drug weight; however, I believe that [Ms. Montoya] will present to the Court at sentencing that she believes the drugs are overstated. I will just be prepared for any changes the court may make to the amount of drugs involved." The PSR reflected objections by both Mr. Barth and the Government to the drug weight, both agreeing that the applicable drug weight should be 15–50 kg.

On April 27, 2021, I wrote Mr. Barth, enclosing the email from the Probation Officer of April 26, 2021, and stating, "Enclosed please find the variance papers I filed on your behalf and a copy of an email exchange with Probation. Since Probation did not change the drug weight in the PSR, I modified the objection to reflect the agreement with the Government." Mr. Barth did not instruct me to withdraw from the agreement with the Government on drug weight at any time.

In my view, the agreement with the Government on the drug weight and to avoid a premises enhancement was in the best interests of Mr. Barth.

(ECF No. 307–3, at 1–3.)

deficiency of counsel or resulting prejudice.[13]   Accordingly, Claim One lacks merit and will be DISMISSED.

In Claim Two, Barth contends that: "The Petitioner received ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution when counsel failed to argue for a reduced sentence based upon the difficult conditions of confinement, in that the Petitioner was threatened to continue participation in the conspiracy." (ECF No. 278, at 1.)  Barth suggests that "[t]ext messages and telephone calls from members of the conspiracy to the Petitioner indicate[d] that the Petitioner often acted herein under duress, as his life was threatened should he not continue his participation in the drug distribution conspiracy, even after being arrested." (*Id.* at 11.)  Barth suggests that if counsel had raised this argument, and the Court had considered this information, then under 18 U.S.C. § 3553, he would have received a lower sentence. (*Id.* at 18.)

Once again, Claim Two appears to fault only Mr. Theuer for failing to make this argument at sentencing.   Mr. Theuer explained that he purposely did not raise the argument that Barth suggests here because he believed it was unlikely to succeed, and it was more likely that advancing such an argument could result in Barth receiving an even higher sentence.  Mr. Theuer noted:

> Mr. Barth and I discussed his view that he was coerced to participate in the conspiracy, evidenced by certain text messages.  On January 29, 2021, I wrote Mr. Barth:
>
> > Enclosed please find a draft of the brief in support of a variance sentence.
> > You will note that I did not include an argument that you were coerced.  I did not do so because making that argument could jeopardize acceptance of responsibility.  In the Statement of Facts, you agreed that your involvement was willful and knowing. Furthermore, a coercion argument would give the Government the opportunity to argue that you endorsed coercive tactics by the cartel against Chino in response to his threats to you, for example in IMG 2075 on July 21, 2019.  The texts in October regarding the money

---

[13] From the Court's review, Barth's submissions show that even after his knowing and voluntary plea he thought that his attorneys should continue to fight the charges on his behalf.

are not helpful to a coercion argument because they occurred after the criminal conduct had occurred.[14]

On February 18, 2021, I further reviewed and evaluated recorded calls of Mr. Barth. IMG 2108 on July 24, 2019, was problematic to a coercion argument. On February 18, 2021, I met with Mr. Barth at Western Tidewater Regional Jail to discuss sentencing issues, and I explained to him again my rationale on not including the coercion issue.

Sentencing was continued such that the variance brief was not filed immediately. On April 16, 2021, I met with Mr. Barth at Western Tidewater Regional Jail to again discuss sentencing issues, including the coercion issue. On April 20, 2021, I hand delivered drafts of the variance motion and brief as well as a sealed exhibit to the variance brief for his review and comment; the brief did not include a coercion argument, but the sealed exhibit did address the threats Mr. Barth had received but not as an independent basis for a variance. On April 21, 2021, Mr. Barth telephoned me from Western Tidewater Regional Jail and approved filing of the draft variance brief and sealed exhibit.

In my view, the coercion argument as a basis for a variance was weak, risked loss of acceptance of responsibility, and was not in Mr. Barth's best interests.

I do not recall a conversation with Mr. Barth about the conditions of his pretrial detention at Western Tidewater Regional Jail nor do my notes reflect such a conversation.

(ECF No. 307–3, at 3–4.) Barth fails to show any deficiency of counsel or resulting prejudice.

Counsel wisely eschewed making this coercion argument which clearly would undermine both his

guilty plea and his three-point deduction for acceptance of responsibility. Even with the Court's

finding of the reduced drug weight and the Total Offense Level of 33, if Barth lost the acceptance

of responsibility deduction, his Total Offense Level would be 36, which would result in either a

range of 262 to 327 months or 292 to 365 months of incarceration depending on whether the Court

placed him in Criminal History Category IV or V. These ranges are significantly higher than the

225 months of incarceration that Barth ultimately received. To the extent that Barth faults counsel

for failing to argue that his conditions of confinement were difficult and that should entitle him to

a lower sentence, it is unclear if counsel was aware of this argument. Nevertheless, counsel cannot

be faulted for failing to make this frivolous argument at sentencing, and there was no resulting

---

[14] In this letter, Mr. Theuer also asked for Barth's prompt input on the variance brief he had drafted.

prejudice to Barth.  The Court made it abundantly clear at sentencing that it had taken all of the factors in § 3353 into account when determining the appropriate sentence for Barth and was ultimately not persuaded by Barth's argument that a sentence of 132 months was appropriate.  (*See* ECF No. 190, at 4.)  Barth fails to demonstrate that an argument about tough conditions of confinement would change the Court's determination of his sentence.  In sum, counsel cannot be faulted for failing to make an argument that could undermine Barth's guilty plea and cause him to lose his sentencing benefit for his plea.  Counsel can also not be faulted for making a frivolous argument about how Barth's conditions of confinement should lead to a lesser sentence.  Barth also shows no resulting prejudice from counsel's failure to advance these arguments.  Thus, Claim Two lacks merit and will be DISMISSED.

### III.    REQUEST FOR EVIDENTIARY HEARING

Barth's fourth claim is a request for an evidentiary hearing.  (*See* ECF No. 278, at 2.)  In determining whether a case warrants an evidentiary hearing, a federal court must consider whether the evidentiary hearing would provide the petitioner the opportunity to "prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."  *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *see Mayes v. Gibson*, 210 F.3d 1284, 1287 (10th Cir. 2000).  A federal court must also consider the standards set forth in 28 U.S.C. § 2255 when considering whether an evidentiary hearing is appropriate.  *Schriro*, 550 U.S. at 474.  "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."  *Id.*

Here, based on a thorough evaluation of Barth's claims and the record before the Court, the Court concludes that Barth's claims of ineffective assistance of counsel lack merit.  The Court,

therefore, concludes that relief under § 2255 is not warranted. Accordingly, no evidentiary hearing is needed here.

## IV. CONCLUSION

The § 2255 Motion, (ECF No. 277), will be DENIED. Barth's claims and the action will be DISMISSED. A certificate of appealability ("COA") will be DENIED.[15]

An appropriate Order shall accompany this Memorandum Opinion.

Date: 13 November 2023
Richmond, Virginia

---

[15] An appeal may not be taken from a final order in a § 2255 proceeding unless a judge issues a COA. 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Barth has not met this standard.